# UNITED STATES of America

v.

# PETRO–PROCESSORS OF LOUISIANA, INC., et al.

### Civ. A. No. 80–358–B.

United States District Court, M. D. Louisiana.

Sept. 23, 1982.

James Lemelle, Baton Rouge, La., for United States.

H. H. Hillyer, Jr., New Orleans, La., C. W. Phillips, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for defendants.

Patricia L. Norton, Asst. Atty. Gen., Baton Rouge, La., for the State of La.

Stephen M. Irving, Baton Rouge, La., for CBS, Inc.—intervenors.

POLOZOLA, District Judge.

This case involves another of a seemingly never ending line of cases wherein public officials and private corporations seek to hide behind a federal judge's robe to cover their actions or inactions. It also involves a case wherein public officials and private industry have intentionally misled the public and the news media by not fully disclosing facts in order to promote their own selfish gains.

On July 21, 1980, the United States filed this suit against Petro-Processors of Louisiana, Inc. (Petro-Processors) and a number of other private corporations seeking to have the defendants clean up a disposable waste site which is located on the Petro-Processors property. The State of Louisiana filed a petition of intervention on the same date, which was granted by the Court. Since this suit was filed the Court has held numerous conferences with the parties and has strongly encouraged the parties to amicably resolve this litigation. On March 13, 1981, the Court issued a minute entry which provided in part: "It Is Further Ordered that the Government shall, within 30 days, submit a proposed offer of settlement to the other parties with a copy to the Court. Within 30 days after receipt of the Government's proposal, the defendants shall either

accept the Government's proposal or submit a counter proposal in this matter. The Court hereby encourages each party to give full and serious consideration to working out a proposed settlement of this particular case." In accordance with this minute entry, the parties exchanged settlement proposals which later resulted in the parties entering into a stipulation which was filed with the Court on August 4, 1981. Under the terms of this stipulation, which was approved by the Court on December 21, 1981 after holding a status conference with the parties, the defendants and the State of Louisiana entered into an agreement under which the defendants deposited the sum of $218,000 into an escrow account. In return, the State of Louisiana agreed to undertake to do the following:

"a. Restoration of any portions of the holding pond berms at the Brooklawn site which have sloughed off or eroded and application of a vegetative covering to the holding pond berms. All work shall be done in such a manner as to prevent further sloughing or erosion;

b. Extension of the runoff diversionary berm around the entire upslope side of the holding ponds at the Brooklawn site in order to prevent erosion;

c. Diversion of runoff inflow at the Brooklawn site which presently enters the upper holding pond so as to minimize the amount of surface water which enters the pond;

d. Removal, treatment and discharge of as much standing liquid as feasible in both holding ponds at the Brooklawn site to achieve a minimum of two (2) feet of freeboard in each pond;

e. Providing fencing and signs at both sites to a standard set by Office of Environmental Affairs, Department of Natural Resources."

While this matter was pending, the defendants also commissioned to have certain ground and surface water investigations conducted by independent consultants employed by their counsel.

On June 28, 1982, the State of Louisiana through the Department of Natural Resources, represented by William J. Guste, Jr., the Attorney General of the State of Louisiana, and the industry defendants filed with the Court a stipulation which contained the following language:

"5. To facilitate and encourage the exchange of information and negotiations among them, the parties agree that the Geraghty & Miller report and the Summary of Review Services report of Tera Corporation for the Industry Defendants, and test and sampling results underlying those reports shall be provided to Louisiana by the Industry Defendants within five (5) days of the entry of the accompanying Order by the Court, subject to the following restrictions and conditions:

a. They shall be deposited with the Court, under Seal;

b. They shall be treated by all parties by whom they are received as confidential and shall be used by them solely for the prosecution and/or defense of this action;

c. They shall not be disclosed to any person by the receiving parties, except to counsel of record, including outside experts and consultants, potential expert witnesses in this case, and directors, officers and appropriate employees of receiving parties or their counsel to whom it is necessary that the material be disclosed for purposes of this litigation and supervision, and except as may be required by a Court of competent jurisdiction; and

d. They may be introduced as exhibits to or read into the record or paraphrased at any deposition by any receiving party, or be similarly disclosed by any receiving party through any other means of discovery, or in any correspondence, pleading, motion, memorandum or other document submitted herein only under seal and any deponent or person to whom disclosure is made shall be informed of and bound by this Stipulation and Order."

On the same date the Court approved the stipulation which had been submitted on

behalf of the State of Louisiana and the industry defendants. No pretrial conference was held by the Court to resolve any disputes between the parties. The Court accepted and approved the stipulation as submitted by counsel for the parties in this case.

On July 6, 1982, the United States filed a request for status conference. Attached to the request for status conference was a proposed stipulation which had been negotiated between counsel for the United States, the State of Louisiana, and the individual industry defendants. Under the proposed stipulation, the parties agreed to exchange certain information. However, the parties also agreed that the information exchanged should be sealed and kept confidential by the parties. The *only* dispute between the parties over the proposed stipulation was whether or not the United States had a right to disclose information it received from the defendants to other federal officials charged with criminal enforcement responsibilities should the need arise. The Court scheduled a status conference in this case on August 4, 1982, to discuss the proposed stipulation and to attempt to resolve the dispute over whether the United States had a right to disclose the information to federal officials charged with criminal enforcement responsibilities. At no time, before or after the conference, was there ever any dispute regarding the *private* agreement made by and between the United States, the State of Louisiana, and the individual defendants over whether or not the information to be exchanged by and between these parties should be maintained under seal and treated by all parties as confidential. More specifically, the parties voluntarily agreed, without being ordered to do so by this Court, to the following: "to facilitate and encourage the exchange of information and negotiations among them, the parties agree that Geraghty and Miller report for the industry defendants and the Ecology and Environment, Inc. report for the United States, and test and sampling results underlying those reports shall be exchanged by the industry defendants and the United States within 5 days of the entry of the accompanying order by the Court, subject to the following restrictions and conditions: (a) they shall be deposited with the Court, under seal; (b) they shall be treated by all parties by whom they are received as confidential and shall be used by them solely for the prosecution and/or defense of this action; (c) they shall not be disclosed to any person by the receiving parties, except to counsel of record, person assisting counsel of record, including outside experts and consultants, potential expert witnesses in this case, and directors, officers and appropriate employees of receiving parties or their counsel to whom it is necessary that the material be disclosed for purposes of this litigation and supervision, and except as may be required by a court of competent jurisdiction; and (d) they may be introduced as exhibits to or read into the record or paraphrased at any deposition by any receiving party, or by similarly disclosed by any receiving party through any other means or discovery, or in any correspondence, pleading, motion, memorandum or other document submitted herein, under seal. Any deponent to whom disclosure is made shall be informed of and bound by this stipulation and the accompanying order."

During the status conference, the Court did, in fact, assist the parties in resolving the dispute over the language in paragraph 9 of the stipulation of August 4, 1982. However, paragraph 9 of the stipulation *did not prevent* the parties from disclosing information but, in fact, allowed the United States "to disclose to any authorized representative of the United States or any of its agencies, upon ex parte in camera application to the Court, any potential criminal violation of federal statutes, rules, regulations, or other law."

Despite the fact that the parties to this litigation privately and on their own entered into a voluntary agreement to keep the information under seal and confidential, the parties have chosen to make public statements which indicate that this Court ordered them to keep the information exchanged under seal and confidential. While

it is technically true that this Court did in fact approve the stipulation, it is not true that this Court ordered the parties to enter into an agreement to keep this information confidential and under seal. The State of Louisiana, represented by the Attorney General of this State, and the United States, represented by counsel from the Environmental Enforcement Section of the Land and Natural Resources Division of the United States Department of Justice and by the United States Attorney's Office for the Middle District of Louisiana, and counsel for the individual industry defendants chose *on their own* to enter into such an agreement. To now relate to the public and to the news media that these parties are unable to disclose information because of a court order is simply a misstatement of the true facts involved. This Court has no objection to the information now being made public. At the time the agreement and stipulation was entered into by the parties, the Court had no such objection to the information being made public. However, this Court shall not stand by and allow public officials and private individuals to make distorted statements to the public and to the news media which accuse this Court of preventing them from disclosing certain information when it was these public officials and private individuals who chose to keep this information confidential.

It is sad that counsel for the parties involved in this case have not fully disclosed to the public and to the news media that it was the parties and not the Court who wanted to keep this matter confidential. Rather than make a full and truthful disclosure to the public, the parties have chosen to blame a federal judge for their inability to now disclose information which the public and media now seek. This Judge is simply not going to allow the federal court to be used by those who seek to promote their own selfish gain and who fail or refuse to carry out and accept their responsibilities on controversial issues. It now appears that taking a public stand on certain of the issues involved in this case is politically expedient to certain public officials involved in this case. It also appears

that the other parties in this case would rather hide behind the shield of a judicial robe rather than releasing information to those who seek it. This Court shall not tolerate such conduct nor be a part of it.

All parties in this case have now chosen to give misleading and partial statements regarding the true facts of this case. For this Court to stand by and allow these continued half truths and misrepresentations to continue would only cause this Court to be a part of the very conduct it is now criticizing. For this reason, the Court will vacate the orders entered on June 28, 1982, and on August 4, 1982, which approved the stipulations submitted by the parties which requested certain information to be exchanged by the parties to be sealed and kept confidential.

One additional comment needs to be made by the Court. In recent days many of the parties, through pleadings or otherwise, have made statements regarding the dangerous conditions which allegedly exist at the Petro-Processors site. This site has now been compared to other widely known waste contamination sites around the country. The Court wonders why these parties did not take a stand earlier in this matter when the Court met with the parties on December 11, 1980 and requested the parties to "be prepared to discuss proposed discovery procedures and also the recently enacted 'superfund statute'" at a conference which was to be held on March 13, 1981.

The superfund statute was enacted by the Congress to provide funds for the clean up of waste disposal sites in the United States. At the March 13, 1981 conference, the Court spent a substantial amount of time trying to encourage the parties to solicit funds under the Act in order that the site in question could be cleaned. Despite these requests, the State of Louisiana failed or refused to request superfund money to be used for the site in question. This Court has never received a satisfactory explanation why superfund money was not requested by the State of Louisiana for the Petro-Processors project. It may well have been

that even had a request been made for funds under the Act, such request would have been rejected. The Court also encouraged the United States to see what could be done in order that the State of Louisiana could obtain superfund money for this project. Despite the Court's repeated requests, little or no action has been taken by the parties to obtain funds for this project. Because the Court has been advised that most, if not all, of the superfund money has been obligated, it is probable that the State will receive little or no funds from the superfund to eliminate the alleged hazardous conditions which exist at the Petro-Processors property. Now, counsel for the United States and counsel for the State of Louisiana have made serious charges regarding the alleged current dangers of the waste disposal site. The Court believes that there has been substantial progress made to determine the nature and extent of the alleged hazardous waste which may be stored on the site and, hopefully, after all test results are in, the parties will be able, as the Court has encouraged time and time again, to amicably resolve this dispute. For this case to be amicably resolved, however, the parties must stop pointing fingers at each other, and should work together to determine what dangerous waste, if any, exists on the property, and who will undertake the responsibility to clean the site.

Therefore, for the above reasons:

IT IS ORDERED that the orders issued by the Court on June 28, 1982 and August 4, 1982 which ordered the information exchanged herein to be sealed and kept confidential, be and each is hereby VACATED AND SET ASIDE.

IT IS FURTHER ORDERED that the materials, if any, which have been filed with the Court under seal shall now be filed in the record of this case.

IT IS FURTHER ORDERED that the parties may now release, if they wish, any of the material which was previously sealed in accordance with the stipulations approved by the Court on June 28, 1982 and August 4, 1982.